UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDNI ALFRED MOORE, | No. 2:22-cv-0758 DC AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| RICK HILL, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se. Currently before the court is plaintiff's second amended complaint. ECF No. 24.

I.   Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639,

1  640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as
2  stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a
3  constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.
4  Franklin, 745 F.2d at 1227-28 (citations omitted).

5      "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the
6  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of
7  what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550
8  U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
9  "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context
10 of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Wilhelm v. Rotman,
11 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure
12 to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a
13 cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the
14 speculative level."  Twombly, 550 U.S. at 555 (citations omitted).  "[T]he pleading must contain
15 something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally
16 cognizable right of action."  Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur
17 R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

18     "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
19 relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
20 Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
21 content that allows the court to draw the reasonable inference that the defendant is liable for the
22 misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this
23 standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg.
24 Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the
25 pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor,
26 Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).
27 ////
28 ////

II.     Second Amended Complaint

The complaint alleges that defendants Hill, L. Johnson, Critz, Bailey, Pagon, Banke, Barnes, T. Johnson, Billings, Johns, Ford, Kunkes, Marshall, Reyersbach, and Harris violated plaintiff's constitutional rights. ECF No. 24.

Plaintiff alleges that on March 22, 2021, he was taking a "bird bath" in his cell when L. Johnson told him to take down the privacy curtain he had put up. Id. at 4. Plaintiff told her he was "bird bathing" and Johnson once again demanded he remove the curtain. Id. He then pulled the curtain back far enough to show his face so that Johnson could see he was discontent with her implied demands that he show his genitals, and she got upset and yelled at him to take the curtain down before walking off. Id. In the week prior to this encounter, plaintiff had two additional encounters with Johnson where she made suggestive noises or facial expressions upon seeing plaintiff's "genital imprint" and bare upper body. Id. at 5.

The following day, plaintiff had the curtain up while using the toilet and Johnson once again yelled at him to take it down. Id. He pulled the curtain back to show her he was on the toilet and then put it back in place. Id. Johnson again told him to take the curtain down and walked off. Id. About ten to fifteen minutes later, Johnson returned with Billings and Johns. Id. Billings and Johns handcuffed plaintiff behind his back and escorted him to another location for a strip search while Johnson searched his cell and claimed to have found "spice." Id. While escorting plaintiff down a flight of stairs, Billings pushed his hand into plaintiff's chest three times, each with increasing force, while asking if plaintiff was okay and saying he did not want plaintiff to fall. Id. at 15. Plaintiff asserts that Billings was deliberately attempting to hurt him while Ford just watched. Id. Then, during the strip search, when plaintiff had to squat and cough, Billings tilted his head to view plaintiff's rectum cavity, smiled, and said "one more time, one more time," as though he was in a strip club. Id. at 9. Plaintiff refused and Billings concluded the search after Johns, who had been filling out paperwork, gave him an inquisitive look. Id.

On April 8, 2021, plaintiff was interviewed by Critz regarding his sexual misconduct claim against L. Johnson. Id. at 6. After plaintiff explained Johnson's conduct, Critz ended the interview and told him that it was unnecessary to fill out any paperwork. Id. When plaintiff went

to look for Critz approximately thirty to forty minutes later, Bailey handed plaintiff a rules violation report stating that he had tested positive for mirtazapine and Marshall told him he brought it on himself.  Id.  Plaintiff asserts that the violation was fabricated and that Bailey altered the dates to make it look like the violation occurred prior to his sexual misconduct complaint.  Id.  He then talked to Harris, who looked into the matter and told him the report stated that Pagon had called a pharmacist and told him that plaintiff had signed a medical release, after which the pharmacist informed him that plaintiff was not prescribed medication that would test positive for mirtazapine at the time of the urinalysis.  Id.  Plaintiff later learned that mirtazapine is a medication he had been on for over two years.  Id.  He asserts that Marshall requested the report and Critz signed off on it minutes after concluding his sexual misconduct interview.  Id. at 7.

On April 12, 2021, plaintiff was found guilty of the violation.  Id. at 8, 13.  He was not provided an investigative employee or granted any witnesses, and Barnes gave him thirteen "dispositions," which was ten over the required amount.  Id.  A few days later, plaintiff was found guilty of a separate violation for drug paraphernalia based on Johnson's March 23, 2021 search of his cell.  Id. at 8.  Plaintiff was also not allowed an investigative employee, staff assistant, or witnesses in connection with that hearing.  Id.  On October 5, 2021, Bailey and Harris colluded to charge plaintiff with yet another violation, this time for conspiracy to introduce a controlled substance.  Id. at 14.  Plaintiff talked to a lieutenant who indicated he could not be found guilty, but Banke refused to let him call the lieutenant as a witness and found him guilty of the violation. Id.

On April 26, 2021, Critz interviewed plaintiff again regarding the claims against L. Johnson after plaintiff called the Office of the Inspector General to make another complaint.  Id. at 7.  Critz became agitated with plaintiff and told him he had already declined the claim because "it didn't meet his requirements" and later destroyed the recording of the interview.  Id. at 7-8.  On July 7, 2021, Pagon retaliated against plaintiff by attempting to coerce plaintiff into an interview about an unspecified topic, and plaintiff was later informed by another inmate that Pagon was secretly recording the attempted interview.  Id. at 12.

////

4

Finally, plaintiff claims that between June 1 and August 19, 2021, his legal mail was regularly tampered with. Id. at 10-11.

### III. Claims for Which a Response Will Be Required

To the extent plaintiff is attempting to allege a due process claim based on the falsified charges brought against him, false statements by a correctional officer do not violate an inmate's constitutional rights and cannot, based on alleged falsity alone, support a claim under 28 U.S.C. § 1983. See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) ("[T]here are no procedural safeguards protecting a prisoner from false retaliatory accusations."). However, the allegation that on April 8, 2021, Bailey, Marshall, and Critz worked in coordination to issue plaintiff a disciplinary based on false charges, because of the complaint plaintiff made against Johnson, is sufficient to state a claim for retaliation against these defendants. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (retaliation claim must include allegation that defendant took adverse action against plaintiff because of his protected conduct and that the action chilled plaintiff's exercise of First Amendment rights and lacked legitimate correctional goal).

### IV. Failure to State a Claim

#### A. Retaliation

Although plaintiff has stated a claim for retaliation against Bailey, Marshall, and Critz based on the April 8, 2021 rules violation, he fails to state a claim for retaliation against Bailey, Harris, and Banke based on the October 5, 2021 disciplinary and subsequent conviction because he does not allege any facts indicating that the disciplinary was issued and he was found guilty because of his protected conduct. He also fails to state a claim for retaliation against L. Johnson based on the search of his cell and her false accusation that he had "spice" because there are no allegations demonstrating that he had made any complaints at that time. He similarly fails to state a retaliation claim against Pagon as there are no facts demonstrating that he was aware of and motivated by plaintiff's complaint against Johnson, nor is there any indication of how Pagon's later attempt to secretly record plaintiff about an unspecified topic constitutes retaliation.

////

////

B.  Personal Involvement

"Liability under § 1983 must be based on the personal involvement of the defendant," Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted). Furthermore, "[t]here is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). A supervisor may be liable for the constitutional violations of his subordinates if he "knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Finally, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825, 836-38 (1970).

Plaintiff does not make any allegations against defendants Hill, T. Johnson, Kunkes, or Reyersbach and therefore fails to state any claims for relief against them. The court notes further notes that most of these individuals are identified as having supervisory positions, ECF No. 24 at 2-3, and to the extent any of these defendants have been named solely based upon their positions as supervisors, this is not sufficient to state a claim.

C.  Sexual Harassment

"Although prisoners have a right to be free from sexual abuse, . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (internal citation omitted). While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the latter to be in violation of the constitution." Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000)); Austin, 367 F.3d at 1171-72 (officer's conduct was not sufficiently serious to violate the Eighth Amendment where

officer exposed himself to prisoner but never physically touched him).

Plaintiff has not alleged facts which demonstrate that the harassment he experienced from either L. Johnson or Billings rose to the level of an Eighth Amendment violation, and therefore fails to state a claim for relief based upon their conduct.

### D. Right to Privacy

The Ninth Circuit has recognized that "incarcerated prisoners retain a limited right to bodily privacy." Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988). However, while the "circuit's law respects an incarcerated prisoner's right to bodily privacy, [it] has found that assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." Id. at 334 (citing Grummett v. Rushen, 779 F.2d 491, 494-95 (9th Cir. 1985)). Plaintiff's allegations that L. Johnson instructed him to remove the curtain, started at his bare chest and "genital imprint," saw his face while he was washing in his cell, and had only a brief glimpse of plaintiff on the toilet are insufficient to demonstrate that plaintiff's limited right to privacy was violated. See id. ("Evidence of female officers' role in shower duty . . . did not establish an inappropriate amount of contact with disrobed prisoners."); Grummett, 779 F.2d at 494-95 (no violation of privacy where female guards were assigned to positions where they observed unclothed male inmates when positions "require[d] infrequent and casual observation, or observation at a distance").

### E. Excessive Force and Failure to Protect

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Although plaintiff alleges that Billings pushed his hand into plaintiff's chest in an attempt to hurt him by causing him to fall down the stairs, it does not appear that plaintiff fell down the stairs, and the facts alleged are insufficient to demonstrate that the force used by Billings was sufficient to rise to the level of an Eighth Amendment violation. Because there are insufficient facts to establish that Billings used excessive force

7

1 against plaintiff or caused plaintiff any actual injury, the allegation that Johns and Ford[1] failed to
2 protect plaintiff from Billings also fails to state a claim for relief. See Farmer v. Brennan, 511
3 U.S. 825, 834 (1994) (Eighth Amendment violated where prison official is deliberately indifferent
4 to serious risk of harm).

### F. Strip Search

A detention facility's strip-search policy is analyzed using the test for reasonableness outlined in Bell v. Wolfish, as "[t]he Fourth Amendment prohibits only unreasonable searches." Bull v. City and County of San Francisco, 595 F.3d 964, 971-72 (9th Cir. 2010) (alteration in original) (quoting Bell v. Wolfish, 441 U.S. 520, 558 (1979)). Under Bell, the court must balance "the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. In order to do so, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. (citations omitted).

Plaintiff alleges that the Billings subjected him to a visual strip search in a holding cell after L. Johnson claimed to have found drugs in his cell. He provides no information regarding whether the allegedly fabricated discovery of drugs was the only reason he was subjected to a strip search or if there were other reasons justifying the search. There are also no facts indicating that the place in which the search was conducted was inappropriate or that the scope of the search exceeded a visual strip search. See Bell, 441 U.S. at 558-560 (general institutional security concerns render routine visual inspection of genitals and anus, and "squat and cough" procedure reasonable within the meaning of the Fourth Amendment). With the exception of the last portion of the search, there are no facts indicating that Billings performed the search in an unprofessional manner. With respect to plaintiff's claim that Billings told him to perform the squat and cough portion of the search a second time—and did so in a suggestive manner—there is no indication

---

[1] Plaintiff initially alleges that Johns reported to escort him but states then alleges that Ford was the one who stood by and watched. ECF No. 24 at 15. It is therefore unclear whether plaintiff is alleging that Ford took over the escort and Johns was not present at the time Billings pushed him or whether he is claiming both defendants were present. Regardless, he fails to state a claim for failure to protect against either.

that plaintiff was actually required to squat and cough a second time and the inappropriate nature of Billings' tone, by itself, does not render the search unreasonable. See Johnson v. Carroll, No. 2:08-cv-1494 KJN, 2012 WL 2069561, at *30, 2012 U.S. Dist. LEXIS 79380 (E.D. Cal. June 7, 2012) (requiring prisoner to complete "squat and cough" portion of the strip search three times was within constitutional limits); Burton v. City of Spokane, No. 06-cv-0322 RHW, 2009 WL 772929, at *4-5, 2009 U.S. Dist. LEXIS 23185, at *12, 15 (E.D. Wash. Mar. 18, 2009) (officers executing search warrant entitled to qualified immunity because alleged comments that "[t]here is no crack in this crack" and "I wonder if he has ever been molested" made during strip search of arrestee did not rise to the level of a constitutional violation), aff'd sub nom. Burton v. Spokane Police Dep't, 383 F. App'x 671, 673 (9th Cir. 2010).

### G. Failure to Investigate

To the extent plaintiff is attempting to state a claim against Critz for failing to investigate his claims of sexual misconduct, plaintiff fails to state a claim for relief. See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." (citation omitted)). There are no facts showing that Critz was aware of an ongoing violation of plaintiff's rights such that he had the opportunity to intervene or take some other corrective action. As the Seventh Circuit has observed, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007).

### H. Disciplinary

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, an inmate subject to disciplinary sanctions that include the loss of good time credits must receive certain procedural protections, including the opportunity to call witnesses and assistance if he is illiterate or the matter is complex. See id. at 566, 570 (outlining

9

required procedural protections). Plaintiff alleges a loss of good time credits with respect to his third disciplinary only. However, assuming he lost credits due to all three disciplinaries, he still fails to state any claims for relief. Although plaintiff asserts that he was denied witnesses for the first two hearings, he does not identify any witnesses that he sought to have at the hearings. He further fails to demonstrate that he is illiterate or that the matters were sufficiently complex that he required assistance, and there is no right to an investigative employee. See Staggs v. Kelly, No. 2:18-cv-2843 KJN P, 2019 U.S. Dist. LEXIS 145906 at *6, 2019 WL 4034386, at *2 (E.D. Cal. Aug. 27, 2019) ("There is no federally recognized constitutional right to an Investigative Employee." (collecting cases)). With respect to the third disciplinary, where he alleges Banke refused to let him call the lieutenant as a witness, there is no indication that the lieutenant was involved in or had any actual knowledge of the investigation or was doing anything more than commenting on what plaintiff told her about his case.

### I. Legal Mail

Under federal law, "legal mail" entitled to First Amendment protection is narrowly defined as confidential correspondence between a prisoner and his attorney. See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 2014) ("Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail."). The Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017).

Although plaintiff alleges that some of the delayed legal mail was to his attorney, he does not claim any of the mail opened outside his presence was to his attorney. Nor has he identified any individuals responsible for tampering with his mail. Plaintiff has therefore failed to state a claim for relief based upon the opening of his legal mail outside his presence.

### V. No Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato v. United

States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

The undersigned finds that, as set forth above, the second amended complaint fails to state any claims upon which relief may be granted other than the claim for retaliation against defendants Bailey, Critz, and Marshall based on the April 8, 2021 disciplinary charge. Plaintiff has already been given two opportunities to amend the complaint and advised what kind of information he needed to provide. Given that the second amended complaint is largely identical to the original complaint and suffers from all of the same defects previously identified by the court in screening the original and first amended complaints, it does not appear that further amendment would result in additional cognizable claims. As a result, leave to amend would be futile and all claims and defendants, except for the claim for retaliation against defendants Bailey, Critz, and Marshall based on the April 8, 2021 disciplinary charge, should be dismissed without leave to amend.

### VI.  Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that all claims and defendants, except for the claim for retaliation against defendants Bailey, Critz, and Marshall based on the April 8, 2021 disciplinary charge, be dismissed without leave to amend because you have not provided enough information about what defendants did or the conduct you have alleged does not violate your constitutional rights. You have already been given two chances to provide more information and have not been able to state any additional claims.

### CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. The allegations of the second amended complaint state a claim for retaliation against defendants Bailey, Critz, and Marshall based on the April 8, 2021 disciplinary charge. Service is appropriate for these defendants.

2. E-service on defendants Bailey, Critz, and Marshall will be directed by separate order. Plaintiff should not complete service paperwork for these defendants unless ordered to do so by the court.

////

IT IS FURTHER RECOMMENDED that all claims and defendants be dismissed without leave to amend, except for the claim for retaliation against defendants Bailey, Critz, and Marshall based on the April 8, 2021 disciplinary charge.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judges Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 15, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE